UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CARRIME STRATTON,**

                      **Plaintiff,**

            v.                                      1:13-CV-520
                                                      (FJS/DJS)

**WAYNE RUSSELL, JR.,** New York
State Trooper, and **JOHN DOE** (name and number
of whom are unknown at present), and other
unidentified members of the New York State
Police,

                      **Defendants.**
_____

**APPEARANCES**                            **OF COUNSEL**

**OFFICE OF DAVID BRICKMAN**        **DAVID BRICKMAN, ESQ.**
1664 Western Avenue
Albany, New York 12203
Attorneys for Plaintiff

**OFFICE OF DAVID B. KRAUSS**        **DAVID B. KRAUSS, ESQ.**
225 Broadway, Suite 1803
New York, New York 10007
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**          **BRIAN W. MATULA, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant Russell

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

This lawsuit arises from an incident involving Defendant Wayne Russell, Jr. ("Defendant"), a New York State Trooper, and Plaintiff Carrime Stratton. As discussed more fully below, Plaintiff alleges that Defendant improperly detained and arrested him without the requisite justification to do so. Pending before the Court is Defendant's motion for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's false arrest and malicious prosecution claims on the ground that probable cause supported Plaintiff's arrest and subsequent prosecution. *See generally* Dkt. No. 32. Defendant also argues that he is protected from liability under the doctrine of qualified immunity as to these claims. *See id.* Plaintiff opposes this motion. *See* Dkt. No. 33.

**II. BACKGROUND**[1]

On May 11, 2010, Plaintiff was riding in the back seat of a car that Xiomana Aubain was driving. *See* Dkt. No. 32-2 at ¶ 1. Defendant pulled over Ms. Aubain for speeding. *See id.* at ¶ 2. Ms. Aubain advised Defendant that she did not have her driver's license on her and that she thought that it might be suspended. *See id.* at ¶¶ 3-4. Defendant then asked the other passengers in the car their names and whether they had a driver's license. *See id.* at ¶¶ 4-5. Plaintiff told Defendant his name was "Jason Colon." *See id.* at ¶ 6. Defendant subsequently learned that "Jason Colon" was not Plaintiff's real name. *See* Dkt. No. 33-1 at ¶ 6; Dkt. No. 32-5, Depo. of

---

[1] The following facts are undisputed and drawn from Defendant's Statement of Material Facts, *see* Dkt. No. 32-2, and from Plaintiff's Counterstatement of Material Facts, *see* Dkt. No 33-1.

Wayne Russell, Jr., at 30.  Defendant next returned to his police car to run the names of the occupants of Ms. Aubain's car in the NYSPIN database.  *See* Dkt. No. 32-2 at ¶ 7.  Defendant concluded that the driver of the car, Ms. Aubain, had a valid New York driver's license.  *See* Dkt. No. 32-5 at 28.  Defendant ran the name "Jason Colon" through the database, and the search came back as "not on file."  *See* Dkt. No 32-2 at ¶ 7.  After Defendant discovered that the name Plaintiff had given to him was not in the system, he returned to the car to inquire further about Plaintiff's name.  *See id.* at ¶ 7.

The parties vigorously dispute how the traffic stop proceeded once Defendant returned to Ms. Aubain's car.  However they do agree that at some point Plaintiff took off running from where Defendant was questioning him.  *See id.* at ¶ 16.  Defendant eventually apprehended Plaintiff.  *See id*. at ¶ 17.  Plaintiff was later transported to Albany Hospital.  *See id*. at ¶ 21.  While at the hospital, Plaintiff was advised that another trooper had performed a search of Ms. Aubain's vehicle and had found a .380 caliber handgun and a drug scale in a duffle bag.  *See id.* at ¶ 23.  After leaving the hospital, Plaintiff was taken to the station, and Investigator Snow questioned him.  *See id.* at ¶ 25.  Plaintiff was charged with Criminal Possession of a Weapon 2nd, Criminal Impersonation 2nd, and Criminal Using Drug Paraphernalia 2nd.  *See id.* at ¶ 26.  Plaintiff was indicted on these charges.  *See id.* at ¶ 27.  However, all the charges against Plaintiff were dismissed on January 24, 2011, when a court ruled, after a suppression hearing, that all evidence seized was inadmissible.  *See id.* at ¶ 38.

On May 6, 2013, Plaintiff filed the instant action.  *See* Dkt. No. 1.  Plaintiff raised four causes of action against Defendant.  In his first cause of action, Plaintiff alleged that Defendant violated his Fourth Amendment right to be free of an unreasonable seizure and Fourteenth Amendment right to be free of a deprivation of liberty.  *See id*. at ¶ 22.  In his second cause of

action, Plaintiff argued that Defendant used excessive force in violation of the Fourth Amendment. *See id.* at ¶ 24. In his third cause of action, Plaintiff contended that Defendant's actions constituted false arrest and false imprisonment under New York law. *See id.* at ¶ 26. Finally, in his fourth cause of action, Plaintiff alleged that Defendant's actions constituted malicious prosecution under both New York Law and the Fourth Amendment. *See id.* at ¶ 30.

### III. DISCUSSION

**A.     Standard of review**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials "demonstrate the absence of genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant meets this burden, the nonmoving party must "'"set forth specific facts showing a genuine issue for trial."'" *Id.* (quotation omitted). "[I]n ruling on a motion for summary judgment, the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments[.]" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted). However, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting [*Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (*per curiam*)]).

**B.    The disputed facts**

As stated above, the parties provide differing accounts of the events that transpired after Defendant ran the name "Jason Colon" through the NYSPIN database.

Defendant asserts that, when he ran the name that Plaintiff gave him, Jason Colon, through the database, it came back as "not on file." *See* Dkt. No. 32-13 at 3. Thereafter, Defendant returned to the car and asked Plaintiff to step out of the car and Plaintiff complied. *See id*. Defendant then directed Plaintiff to the back of the car, performed a brief pat down for officer safety, and asked for Plaintiff's name, which Plaintiff again stated was "Jason Colon." *See id*. Defendant continued to ask Plaintiff a series of questions regarding his employment and address to ascertain Plaintiff's identity. *See id*. Defendant contends that Plaintiff refused to answer. *See id*. Next, Defendant asserts that Plaintiff "pretended to bend down and tie his shoe, but instead of tying his shoe, Plaintiff took off running." *See id.* at 4-5.

Defendant pursued and caught Plaintiff. *See id.* at 5. According to Defendant, after being apprehended, Plaintiff told Defendant that he had ingested crack while running, that his real name was Carrime Stratton, and that he was wanted for a parole violation. *See id*. Defendant claims that he took Plaintiff to Albany Hospital because he had swallowed crack. *See id.*

While at the hospital, another trooper obtained permission from Ms. Aubain to search the car and found a loaded .380 caliber handgun and a drug scale. *See id*. Defendant then took Plaintiff from the hospital to the station where Investigator Snow questioned him. *See id.* At the

station, according to Defendant, Plaintiff admitted that the gun and scale were his and that he had given Defendant a false name. *See id*. Moreover, Defendant claims that Plaintiff was a parole violator at the time of the car stop. *See id.*

To the contrary, according to Plaintiff, Defendant ordered him out of the car; and, when he asked why, Defendant opened the door and forcefully grabbed Plaintiff by his arm and pulled him out of the car. *See* Dkt. No. 33 at 6. Then, Defendant threw Plaintiff's body against the car and frisked him. *See id*. Defendant continued to ask questions about Plaintiff's identity. *See id*. Defendant ordered Plaintiff to take off his shoes and socks, and Plaintiff complied. *See id*. According to Plaintiff, Defendant then ordered him to take off his pants so that he could search him; and, at that point, Plaintiff ran away. *See id*. Defendant pursued Plaintiff; and, upon apprehending him, "[Defendant] punched him, used his knee to hit him in the ribs, poked him with a nightstick, and shackled and handcuffed him in a manner known as being hog tied before he was thrown in the back of [Defendant's] car." *See id*. at 7.

Plaintiff denies telling Defendant that he swallowed crack and believes that Defendant took him to the hospital to look at injuries that he sustained due to his arrest. *See id*. Plaintiff also denies that the gun and scale belonged to him. *See id*.

C.  **Unreasonable seizure and false arrest claims**

"To establish a false arrest claim under either federal or New York law, a plaintiff must demonstrate that, '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged.'" *Groski v. City of Albany*, No. 1:12-cv-1300, 2014 WL 2532471, *3 (N.D.N.Y. June 5, 2014) (quoting *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110,

118 (2d Cir. 1995)). Defendant concedes the first three elements; therefore, the only issue is whether the confinement was "otherwise privileged."

It is well-settled that not every police encounter implicates the Fourth Amendment. *See People v. Hicks*, 68 N.Y.2d 234, 239 (1986) (citations omitted). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, '"by means of physical force or show of authority,"' terminates or restrains his freedom of movement, . . .'through means intentionally applied'. . . ." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations omitted). Generally, the Fourth Amendment covers two categories of seizures that must be justified to be lawful. *See Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991). The first, known as a *Terry* stop, involves "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time" to temporarily detain an individual "if there is articulable suspicion that [the detainee] has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498, 500 (1983) (citation omitted). The Supreme Court has further described this standard, known as "reasonable suspicion," as requiring "'a particularized and objective basis' for suspecting the person stopped of criminal activity[.]" *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418, 101 S. Ct. 690, 694-695, 66 L. Ed. 2d 621 (1981)). Furthermore, a frisk is permitted during a *Terry* stop of a vehicle; however, "to justify a patdown of . . . a passenger during a traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

"As the level of intrusiveness rises, however, an encounter between the police and a citizen is more properly categorized as an arrest -- the second category of seizures of the person."

*Posr*, 944 F.2d at 98. "The test [for whether a seizure has occurred] is an objective one, . . . based on how a reasonable innocent person would view the encounter. . . ." *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (internal citations omitted). Several factors might suggest that a seizure has occurred, including

> "the threatening presence of several officers; the display of a weapon; the physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room."

*Id*. (quoting *Lee*, 916 F.2d at 819) (other citations omitted).

"'If the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause.'" *Posr*, 944 F.2d at 98 (quoting *Hastamorir*, 881 F.2d at 1556) (other citations omitted).

The facts of this case implicate both categories of seizure. There is no dispute that Plaintiff was seized, for Fourth Amendment purposes, from the moment the traffic stop was commenced.[2] *See Brendlin*, 551 U.S. at 251 (holding that a passenger of an automobile is seized when a police officer makes a traffic stop). Although asking Plaintiff to exit the vehicle was likely permissible by virtue of the traffic stop, *see Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) (holding "that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" (footnote omitted); once Plaintiff was outside the vehicle, Defendant proceeded to conduct a totally independent investigation into Plaintiff's name. Therefore, because Defendant detained "the [passenger] for further questioning unrelated to the

---

[2] Plaintiff does not challenge the legality of the traffic stop.

initial stop, [he] must have [had] an objectively reasonable articulable suspicion that illegal activity has occurred or is occurring." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993) (citation omitted); *see also United States v. Restrepo*, 890 F. Supp. 180, 193 (E.D.N.Y. 1995) (quotation omitted).

The Supreme Court recently concluded, however, "that the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention." *Rodriguez v. United States*, __ U.S. __, __, 135 S. Ct. 1609, 1614 (2015) (citing *Johnson*, 555 U.S., at 327-28, 129 S. Ct. 781 (questioning); *Caballes*, 543 U.S., at 406, 408, 125 S. Ct. 834 (dog sniff)). However, it would stretch credulity to suggest that Defendant's actions did not extend the traffic stop. Defendant concluded that the driver of the vehicle had a valid license but decided that he would transform a routine traffic stop into an investigation into Plaintiff's name. *See* Dkt. No. 32-5, Depo. of Wayne Russell, Jr., at 33:5-18. Therefore, to justify the extended investigation, Defendant must have developed "a reasonable suspicion of criminal activity supported by specific and articulable facts." *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015) (citation omitted).

In this case, even assuming the correctness of Defendant's version of events, there was no reasonable suspicion to continue to investigate Plaintiff's identity. The only thing that Defendant knew prior to asking Plaintiff to exit the vehicle was that the name Plaintiff had given him was not in the NYSPIN database. As Defendant admitted, however, not everyone's name is in the NYSPIN database; and he had no reason to suspect that Plaintiff had given him a false name at the time he searched the name "Jason Colon." *See* Dkt. No. 32-5 at 29:16-30:6.

Furthermore, Defendant admits that he performed a brief pat-down for officer safety after asking Plaintiff to exit the vehicle, *see* Dkt. No. 35-2 at ¶ 11; but he has not indicated on what

basis he concluded that he needed to perform such a pat-down for safety, *see Johnson*, 555 U.S. at 326-27 (stating that, "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous"). Moreover, Defendant continued to question Plaintiff even though Plaintiff consistently claimed his name was Jason Colon. *See* Dkt. No. 35-2 at ¶¶ 8-14. Given the parties' dispute regarding the nature of the events that transpired after the initial traffic stop, the Court concludes that Defendant is not entitled to judgment as a matter of law with regard to Plaintiff's claim that Defendant unreasonably seized him in violation of his Fourth Amendment rights when he removed Plaintiff from the vehicle and initiated a separate investigation into Plaintiff's name.

As the interaction between Defendant and Plaintiff continued, it eventually materialized into an arrest. "Precisely when an arrest occurs depends on the facts of the particular case." *United States v. Levy*, 731 F.2d 997, 1000 (2d Cir. 1984) (citation omitted). However, "a district court may decide the issue of whether an arrest has been made where 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.'" *Keith v. City of New York*, No. 11 Civ. 3577, 2014 WL 6750211, *10 (S.D.N.Y. Dec. 1, 2014) (quoting *Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir. 1994)). In his motion, Defendant does not address the issue of when the arrest occurred. A review of the record indicates that there are several possible instances during the course of Plaintiff's interaction with Defendant and other officers where a reasonable jury could conclude that Plaintiff was arrested. *See Williams v. Cty. of Nassau*, No. 10-CV-4815, 2014 WL 4101545, *6 (E.D.N.Y. Aug. 18, 2014) (finding that a viable false arrest claim existed even before plaintiff was arrested for resisting arrest). Therefore, because there is an issue of fact regarding when an arrest actually occurred, the Court denies Defendant's motion for summary judgment on this ground.

In addition, to succeed on his motion for summary judgment, Defendant "'must establish that the arrest is supported by probable cause.'" *Posr*, 944 F.2d at 98 (quotation and other citations omitted); *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (stating that "'[t]he existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest," . . . brought under . . . § 1983" (quotation and other citation omitted)). An officer has probable cause to arrest when the officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jenkins*, 478 F.3d at 84-85 (quoting *Weyant*, 101 F.3d at 852) (footnote omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer *at the time of the arrest* objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (holding that a court deciding whether probable cause existed must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause" (quotation omitted)). In other words, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. Finally, "[w]hen an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citation omitted).

At the point at which Defendant apprehended Plaintiff after he fled, the undisputed facts indicate that Defendant did not know Plaintiff had given him a false name, had yet to discover the gun or scale, and had yet to interview Plaintiff or the other occupants of the car. Defendant claims that, when he apprehended Plaintiff, Plaintiff "advised [him] that he felt sick because he [had] swallowed crack, his real name [was] Carrime Stratton, and he [was] wanted for a felony probation violation." To the contrary, Plaintiff claims that he never told Defendant that he had swallowed crack or that he had a felony probation violation, and he only revealed his real name "after he was arrested." *See* Dkt. No. 33-1 at ¶ 18. Therefore, the Court denies Defendant's motion for summary judgment with regard to Plaintiff's false arrest claim because a dispute as to material facts exists regarding the issue of probable cause.

Finally, the Court concludes that Defendant is not entitled to qualified immunity with regard to Plaintiff's unreasonable seizure and false arrest claims. "[A] police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.'" *Jenkins*, 478 F.3d at 87 (quotation omitted). "Without a doubt, the right not to be arrested without probable cause is clearly established." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citations omitted). Thus, the inquiry is "to review the objective reasonableness of [Defendant's] probable cause determination[]." *Id*. "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest -- that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins*, 478 F.3d at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995)) (other citations and footnote omitted).

As recounted above, because there are significant disputes as to material facts with respect to Plaintiff's seizure and arrest, the Court denies Defendant's motion for summary judgment regarding these claims on qualified immunity grounds.[3]

**D.      Malicious prosecution claim**

To allege a claim for malicious prosecution, a plaintiff must show that "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (citations omitted). As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted).

First it is important to recognize that there is a difference between probable cause to arrest and probable cause to prosecute. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). A claim for malicious prosecution only involves the latter. Thus, unlike the analysis for false arrest, the Court can consider the undisputed facts that a gun was found, a drug scale was found, Plaintiff gave Defendant a false name, and Plaintiff violated his parole when evaluating this claim.

---

[3] Defendant submitted a supplemental brief arguing that the Supreme Court's recent decision in *Utah v. Strieff* supports his position because Plaintiff had an outstanding warrant for a parole violation. *See* Dkt. No. 36 (citing *Utah v. Strieff*, __ U.S. __, 136 S. Ct. 2056 (2016)). *Strieff* held that evidence seized after an unlawful stop was not subject to the exclusionary rule because the officer's discovery of a valid arrest warrant attenuated the connection between the unlawful stop and the evidence seized. *See Utah v. Strieff*, 136 S. Ct. 2056, 2064 (2016). Defendant's reliance on *Strieff* is misplaced. The Court in *Strieff* decided only that the policy for admitting certain evidence outweighed the policy to exclude it -- not that it could be relied upon to create retroactive probable cause. *See id*. at 2061.

Furthermore, "[i]f plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983). In other words, an indictment creates a presumption of probable cause.

Plaintiff urges the Court to find bad faith in the prosecution solely because the state court found that evidence was seized in violation of his Fourth Amendment rights. *See* Dkt. No. 32-11. However, Plaintiff has failed to "submit[] evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Savino*, 331 F.3d at 73. In sum, Plaintiff relies on "mere 'conjecture' and 'surmise' [to support his claim] that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Id.* (citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). Thus, Plaintiff has failed to rebut the presumption of probable cause that the indictment created.

Therefore, the Court grants Defendant's motion for summary judgment with regard to Plaintiff's malicious prosecution claim.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Russell's motion for summary judgment, *see* Dkt. No. 32, is **DENIED** with regard to Plaintiff's unreasonable seizure and false arrest claims; and the Court further

**ORDERS** that Defendant Russell's motion for summary judgment, *see* Dkt. No. 32, is **GRANTED** with regard to Plaintiff's malicious prosecution claim;[4] and the Court further

**ORDERS** that counsel shall participate in a telephone conference with the Court on **May 17, 2017**, at **11:30 a.m.**, to schedule a date for the trial of this matter. The Court will provide counsel with the telephone number for this conference prior to the scheduled date.

**IT IS SO ORDERED.**

Dated: March 29, 2017
      Syracuse, New York

                                                   Frederick J. Scullin, Jr.
                                                   Senior United States District Judge

---

[4] As a result of this Memorandum-Decision and Order, the claims that remain for trial are (1) Plaintiff's unreasonable seizure claim under the Fourth Amendment (first cause of action); (2) Plaintiff's false arrest claim under New York law (third cause of action); and (3) Plaintiff's excessive force claim under the Fourth Amendment (second cause of action).